

FILED TD
9/25/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AUSA Hayley Altabef (312) 353-5357

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

EMMANUEL ESSILFIE

Case No.: 24 CR 453

Magistrate Judge Maria Valdez

## AFFIDAVIT IN REMOVAL PROCEEDING

I, JEFFREY M JAMROSZ, appearing before United States Magistrate Judge Maria Valdez by telephone and being duly sworn under oath, state that as a federal law enforcement officer I have been informed that EMMANUEL ESSILFIE has been charged by Indictment in the Northern District of Ohio with the following criminal offenses: conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349; and money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h).

A copy of the Indictment is attached. A copy of the arrest warrant also is attached.

JEFFREY M JAMROSZ
Special Agent
Federal Bureau of Investigation

SWORN TO AND AFFIRMED by telephone this 25th day of September, 2024.

MARIA VALDEZ
United States Magistrate Judge

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 3:23CR122 |
| Emmanuel Okereke, et al | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*      Emmanuel Essilfie                                                                          ,

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment   ☑ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☐ Complaint

☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 1349: Conspiracy
18 U.S.C. § 1956(h): Money Laundering Conspiracy

Date:  6/28/23

*Issuing officer's signature*

City and state:      Toledo, Ohio

Kelly Roddy, Courtroom Deputy Clerk
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____ |
| _____ *Arresting officer's signature* |
| _____ *Printed name and title* |

FILED

SEP 1 1 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | THIRD SUPERSEDING |
| | ) | INDICTMENT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AYOBAMI OSAS CHRISTOPHER, | ) | JUDGE JAMES R. KNEPP, II |
|     aka Lovely Man | ) | |
|     aka Badman Lovely | ) | CASE NO. 3:23 CR 122 |
|     aka AY | ) |     Title 18, United States Code, |
|     aka AYO | ) |     Sections 1349, 1956(h), and 2 |
| EMMANUEL OKEREKE, | ) | |
|     aka Omo Igbo | ) | |
| OLALEKAN BASHIRU, | ) | |
|     aka Ola Bash | ) | |
| MARK DABNEY | ) | |
| CASEY ADESULU JR., | ) | |
| JEREMIAH AGINA, | ) | |
| AYORINDE EMMANUEL ADEBAYO, | ) | |
| ADEREMI ADEYEMI, | ) | |
| EMILY AGYEMANG, | ) | |
| OLUWAFEMI MICHAEL AYOYEMI, | ) | |
| ADEMOLA BALOGUN, | ) | |
| OLABODE BANKOLE, | ) | |
| INDIA BARNES, | ) | |
| ARUAN DRAKE, | ) | |
| EMMANUEL ESSILFIE | ) | |
| CHUKWUEMEKA EVULUKWU, | ) | |
| JEREMIAH GLINSEY, | ) | |
| LON GOODMAN, | ) | |
| SHAQUILLE I. JACKSON, | ) | |
| MIKHAIL KEIZE, | ) | |
| KATIERA LACKEY, | ) | |
| █████████ | ) | |
| KINGSLEY OWUSU, | ) | |
| ANTON PARKER, | ) | |
| CARLTON PRUITT, | ) | |
| PETER REED JR., | ) | |
| RONNELL SPENCER, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

ORIGINAL

<u>COUNT 1</u>
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349)

The Grand Jury charges:

1.       From in or around January 2020 until in or around September 2023, in the Northern District of Ohio, Western Division, and elsewhere, Defendants AYOBAMI OSAS CHRISTOPHER, EMMANUEL OKEREKE, OLALEKAN BASHIRU, MARK DABNEY, CASEY ADESULU JR., JEREMIAH AGINA, AYORINDE ADEBAYO, ADEREMI ADEYEMI, EMILY AGYEMANG, OLUWAFEMI AYOYEMI, ADEMOLA BALOGUN, OLABODE BANKOLE, INDIA BARNES, ARUAN DRAKE, EMMANUEL ESSILFIE, CHUKWUEMEKA EVULUKWU, JEREMIAH GLINSEY, LON GOODMAN, SHAQUILLE JACKSON, MIKHAIL KEIZE, KATIERA LACKEY, ▮▮▮▮▮▮▮▮▮▮▮▮▮ KINGSLEY OWUSU, ANTON PARKER, CARLTON PRUITT, PETER REED JR., and RONNELL SPENCER, together with others known and unknown to the Grand Jury, knowingly combined, conspired, confederated, and agreed with each other, and with others known and unknown to the Grand Jury, to commit an offense under Title 18, United States Code, Chapter 63, to wit: knowingly devised, and intended to devise, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud and attempting to do so, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, and pictures, in violation of Title 18, United States Code, Section 1343.

2.       The scheme generally worked as follows.  Unknown co-conspirators, likely overseas, maintained a computer hacking campaign targeting individuals, businesses, and other organizations in the United States and elsewhere.  The campaign's object was to gain access to

genuine e-mail accounts held by individual users. The co-conspirators then monitored the communications and other activities of the individual users in order to learn each user's business practices and contacts.

3.     After gaining sufficient intelligence about the nature of a hacking victim's activities, the co-conspirators sent a fraudulent e-mail to either the hacking victim, or to someone communicating with the hacking victim, requesting payment. Because the co-conspirators were familiar with the hacking victim's activities, the fraudulent e-mail was crafted in a way to convince the recipient that the request for payment was genuine.

4.     The fraudulent e-mails generally took three forms, each of which included false and fraudulent pretenses, representations, and promises:

> a. *Spoof e-mails.* Having hacked a victim's e-mail account, the co-conspirators learned, for example, that the victim owed money to a creditor with whom the victim was in regular contact. After learning the nature of the debt, the co-conspirators created an e-mail account with an address closely resembling the creditor's address. The co-conspirators then sent a "spoof" e-mail from this new account to the hacking victim with payment instructions. Believing the "spoof" e-mail to be genuine, the victim sent the money as directed, not knowing that the funds were being deposited into a bank account controlled by someone conspiring with the sender of the "spoof" e-mail.

> b. *E-mails to third parties from hacked accounts.* After hacking a victim's e-mail account, the co-conspirators learned that the victim was demanding payment from a debtor with whom the victim was in regular contact. Because the co-conspirators already controlled the genuine e-mail account, there was no need to

create a new "spoof" e-mail account.  Instead, the co-conspirators used their control of the hacked e-mail account to send an e-mail to the debtor demanding payment into a bank account controlled by another co-conspirator.  The debtor complied, not knowing the funds were being sent to a bank account controlled by one of the conspirators and not to the individual actually owed the debt. Defendants similarly used this method to request account withdrawals, for example, by sending an e-mail to a victim's investment broker directing a withdrawal to be deposited into a co-conspirator's account.

c.  *Internal e-mails from hacked accounts.*  The computer-hacking co-conspirators hacked e-mail accounts belonging to corporate officers, such as a victim corporation's CEO.  The conspirators then sent an e-mail from the CEO to the corporation's financial officer instructing him to make payment for a given purpose.  The financial officer then complied and sent the funds to a bank account controlled by another conspirator.

5.  Defendants charged herein were responsible for maintaining an ample supply of domestic bank accounts into which their computer-hacking co-conspirators could direct victim payments.  Defendants did this using one, all, or a combination of the following methods:

a.  *Synthetic Identities.*  Defendants created numerous synthetic identities, which they used to open bank accounts.  These identities were synthetic in that they did not belong to real people, but instead relied on a fabricated name, social security number, residential history, and similar information.

b.  *Shell Companies.*  Defendants used both these synthetic identities and their own identities to pose as business owners seeking to open accounts in the

names of shell companies that they created solely for the fraudulent purpose of legitimizing and concealing the receipt and disbursement of fraud proceeds.

      c. *Personal Accounts*. On occasion, Defendants used accounts in their own names to receive and disburse fraud proceeds.

6.     Defendants furthered the scheme to defraud by transmitting or causing to be transmitted e-mail communications and transferring or causing to be transferred funds, with both types of transmissions being sent by means of wire communication in interstate and foreign commerce. These wire communications were sent from, to, and through the Northern District of Ohio from places outside the state of Ohio.

7.     Defendants also furthered the scheme to defraud by concealing it. They did so by quickly disbursing the funds from the accounts into which they were initially deposited, thus frustrating attempts to recover the funds if the fraud were discovered.

8.     In all, the scheme defrauded at least 600 victims. Although some funds were frozen or recovered, the scheme nonetheless convinced victims to part with at least $120 million. Those victims resided throughout the United States, including in Ohio, New York, California, Texas, Kansas, North Carolina, Florida, Arizona, Michigan, Connecticut, Wisconsin, Minnesota, Tennessee, Virginia, Maryland, South Carolina, and New Jersey. Victims also resided in Canada, Mexico, Bermuda, and Romania.

9.     It was part of the scheme that:

      a. CHRISTOPHER directed the conspiracy, including the movement of fraud proceeds from the United States to Nigeria.

      b. OKEREKE, BASHIRU, and DABNEY directed the conspiracy's activities for CHRISTOPHER in Chicago.

c.  BANKOLE directed the conspiracy's activities in Atlanta and provided co-conspirator's with false identifications.

d.  GOODMAN owned and operated New Dolton Currency Exchange. GOODMAN knowingly allowed Defendants to cash fraudulent checks at the New Dolton Currency Exchange, and he retained a portion of the proceeds for himself. GOODMAN also sent e-mails to financial institutions in an effort to conceal the scheme.

e.  REED created false identification documents and gave them to co-conspirators for use in creating shell companies used to open bank accounts and for other purposes.

f.  ADESULU, AGYEMANG, AYOYEMI, BALOGUN, BASHIRU, DABNEY, DRAKE, EVULUKWU, GLINSEY, JACKSON, KEIZE, OKEREKE, PARKER, and SPENCER obtained or negotiated checks funded by fraud proceeds.

g.  ADEYEMI, ADEBAYO, ADESULU, AGINA, AGYEMANG, AYOYEMI, BARNES, BALOGUN, DABNEY, ESSILFIE, EVULUKWU, GLINSEY, JACKSON, LACKEY ███████ OWUSU, PARKER, PRUITT, and SPENCER opened bank and related accounts using real or synthetic identities for the purpose of receiving and transferring fraud proceeds obtained from victims.

<u>Acts in Furtherance of the Conspiracy</u>

10.     In furtherance of the above scheme, and to effect the objects and conceal the existence thereof, Defendants and others performed acts in the Northern District of Ohio and elsewhere, including, but not limited to, the following:

a.    On or about April 1, 2021, a co-conspirator caused Business Victim 1 of Kent, Ohio to send an interstate wire transfer of $29,284 to a bank account controlled by another co-conspirator.

b.    On or about August 4, 2021, AGINA received an interstate wire transfer of $98,667 into a bank account he controlled.  This $98,667 wire was funded from an earlier wire transfer of $284,865 sent by Business Victim 2 to a bank account in the name of a shell company controlled by a different co-conspirator.

c.    On or about November 10, 2021, a co-conspirator caused Victim Financial Institution 1 to send an interstate wire transfer of $54,000 to a bank account controlled by AGYEMANG.

d.    On or about January 19, 2022, a co-conspirator caused Individual Victim 1 to send an interstate wire transfer of $260,356.36 to a bank account controlled by OWUSU.

e.    On or about January 28, 2022, BASHIRU sent an e-mail to SPENCER containing an IRS letter assigning an Employer Identification Number to a shell company.  A bank account was then opened for the shell company for the purpose of receiving fraud proceeds from victims.

f.   On or about February 22, 2022, a co-conspirator caused Business Victim 3 to send an interstate wire transfer of $64,415 to a bank account controlled by ESSILFIE.

g.   On or about February 22, 2022, a co-conspirator caused Individual Victim 2 to send an interstate wire transfer of $83,941.23 to a bank account controlled by JACKSON.

h.   On or about March 10, 2022, a co-conspirator caused Business Victim 4 of Chagrin Falls, Ohio, to send an interstate wire transfer of $75,631 to a bank account controlled by another co-conspirator.

i.   On or about March 17, 2022, a co-conspirator caused Business Victim 5 to send an interstate wire transfer of $30,184.74 to a bank account controlled by PARKER.

j.   On or about April 15, 2022, a co-conspirator caused Business Victim 6 of Hudson, Ohio, to send an interstate wire transfer of $20,000 to a bank account controlled by a different co-conspirator.

k.   On or about April 28, 2022, a co-conspirator caused Municipal Victim 1 in Norwalk, Ohio, to send an interstate wire transfer of $165,693 to a bank account controlled by GLINSEY.

l.   On June 10, 2022, OKEREKE sent an e-mail to EVULUKWU containing an IRS letter assigning an Employer Identification Number to a shell company.  A bank account was then opened for the shell company for the purpose of receiving fraud proceeds from victims.

m. On or about June 23, 2022, a co-conspirator caused Business Victim 7 to send an interstate wire transfer of $71,305.01 to a bank account controlled by PRUITT.

n. On or about June 26, 2022, a co-conspirator caused Business Victim 8 to send an interstate wire transfer of $365,055 to a bank account controlled by BANKOLE.

o. On or about June 27, 2022, a co-conspirator caused Business Victim 9 to send an interstate wire transfer of $79,439 to a bank account controlled by EVULUKWU.

p. On or about July 18, 2022, a co-conspirator caused Business Victim 10 to send an interstate wire transfer of $213,706 to a bank account controlled by ADEBAYO.

q. On or about July 21, 2022, REED, JR. sent an e-mail to BASHIRU containing a fraudulent utility bill to be used in verifying residency for opening a bank account.

r. On July 29, 2022, DRAKE sent an e-mail to GOODMAN which contained the articles of organization for a shell company that received fraud proceeds.

s. On or about August 12, 2022, a co-conspirator caused Business Victim 11 of Hudson, Ohio, to send an interstate wire transfer of $331,814 to a bank account controlled by another co-conspirator.

t.   On or about September 14, 2022, a co-conspirator caused Business Victim 12 to send an interstate wire transfer of $195,551.55 to a bank account controlled by ADEYEMI.

u.   On September 22, 2022, GOODMAN sent an e-mail to a financial institution falsely indicating that he would no longer negotiate cashier's checks for BASHIRU.

v.   On or about November 16, 2022, a co-conspirator caused Business Victim 13 to send an interstate wire transfer of $37,293.86 to a bank account controlled by BALOGUN.

w.   On or about November 16, 2022, a co-conspirator caused Individual Victim 3 to send an interstate wire transfer of $230,00 to a bank account controlled by BARNES.

x.   On or about November 21, 2022, a co-conspirator registered "DMG Food Co." as a corporation with the Ohio Secretary of State's Office.

y.   On or about December 1, 2022, a co-conspirator opened a PNC Bank account in Independence, Ohio in the name of DMG Food Co.

z.   On or about December 6, 2022, a co-conspirator caused Business Victim 14 to send an interstate wire transfer of $150,000 to the DMG Food Co. PNC Bank account opened in Independence, Ohio.

aa.  On or about January 6, 2023, a co-conspirator caused Business Victim 15 to send a $350,265.60 wire transfer to a bank account controlled by DABNEY.

bb. On or about January 12, 2023, a co-conspirator caused Municipal Victim 2 in Greenwich, Ohio to send a wire transfer of $128,527 to a bank account controlled by another co-conspirator.

cc. On or about February 16, 2023, a co-conspirator caused Municipal Victim 3 to send a $323,545.27 wire transfer to an account controlled by ADESULU.

dd. On or about April 3, 2023, a co-conspirator caused Business Victim 16 of Westfield Center, Ohio, to send via overnight courier a check for $212,500 that was later deposited into a bank account controlled by SPENCER.

ee. On or about May 3, 2023, a co-conspirator caused Business Victim 17 of New Riegel, Ohio, to send an interstate wire transfer of $201,953 to a bank account controlled by another co-conspirator.

ff. On or about June 26, 2023, DRAKE sent a text message to OKEREKE indicating that she had a female acquaintance who could open bank accounts.

gg. On or about June 27, 2023, in order to receive fraud proceeds, CHRISTOPHER sent a text message to OKEREKE containing CHRISTOPHER's bank account information.

hh. On or about July 13, 2023, KEIZE received an interstate wire transfer of $110,000 into a bank account he controlled.  This $110,000 wire was funded from an earlier wire transfer of $305,401.60 sent by Business Victim 18 to a bank account in the name of a different co-conspirator's shell company.

ii.  On or about August 3, 2023, AYOYEMI directed a co-conspirator to receive a wire transfer of $498,000 into a bank account the co-conspirator

controlled.  This $498,000 wire transfer was funded from an earlier wire transfer of $2,750,000 sent by Business Victim 19 to a bank account in the name of a shell company controlled by a different co-conspirator.

jj.  On or about August 4, 2023, LACKEY received an interstate wire transfer of $400,000 into a bank account she controlled.  This $400,000 wire transfer was funded from an earlier wire transfer of $2,750,000 sent by Business Victim 19 to bank account in the name of a shell company controlled by a different co-conspirator.



All in violation of Title 18, United States Code, Section 1349.

COUNT 2
(Money Laundering Conspiracy, 18 U.S.C. § 1956(h))

The Grand Jury further charges:

11.     The factual allegations of paragraphs 2 through 10 of this third superseding indictment are incorporated herein by reference.

12.     From in or around January 2020 until in or around September 2023, in the Northern District of Ohio, Western Division and elsewhere, Defendants AYOBAMI OSAS CHRISTOPHER, EMMANUEL OKEREKE, OLALEKAN BASHIRU, MARK DABNEY, CASEY ADESULU JR., JEREMIAH AGINA, AYORINDE ADEBAYO, ADEREMI ADEYEMI, EMILY AGYEMANG, OLUWAFEMI AYOYEMI, ADEMOLA BALOGUN,

OLABODE BANKOLE, INDIA BARNES, ARUAN DRAKE, EMMANUEL ESSILFIE,

CHUKWUEMEKA EVULUKWU, JEREMIAH GLINSEY, LON GOODMAN, SHAQUILLE

JACKSON, MIKHAIL KEIZE, KATIERA LACKEY ███████████████████████████

KINGSLEY OWUSU, ANTON PARKER, CARLTON PRUITT, PETER REED JR., and

RONNELL SPENCER, together with others known and unknown to the Grand Jury, knowingly

and intentionally combined, conspired, and agreed with each other to commit offenses against

the United States, in violation of Title 18, United States Code, Sections 1956 and 1957, to wit:

     a.  knowingly conducting and attempting to conduct a financial transaction

affecting interstate and foreign commerce, which involved the proceeds of a

specified unlawful activity, to wit: wire fraud, in violation of Title 18, United

States Code, Section 1343, knowing that the transaction was designed in whole

and in part to conceal and disguise the nature, location, source, ownership, and

control of the proceeds of the specified unlawful activity, and that while

conducting and attempting to conduct such financial transaction, knew that the

property involved in the financial transaction represented the proceeds of some

form of unlawful activity, all in violation of Title 18, United State Code, Section

1956(a)(1)(B)(i), and

     b.  knowingly engaging and attempting to engage in monetary transactions

by, through, and to a financial institution, affecting interstate and foreign

commerce, in criminally derived property of a value greater than $10,000, that is,

withdrawals, deposits, purchases, and wire transfers of funds, such property

having been derived from a specified unlawful activity, to wit: wire fraud, in

violation of Title 18, United States Code, Section 1343, all in violation of Title

18, United States Code, Section 1957.

13.     Having gained control of the stolen funds as described in paragraphs 2 through 10 of this third superseding indictment, the Defendants next laundered those funds through the domestic banking system and often converted the funds to U.S. currency.  They did so almost exclusively through the following steps:

    a.  *Cashier's Checks*.  When a given Defendant received funds into an account he or she controlled, that Defendant then purchased one or more cashier's checks, funded by the fraud proceeds, and then had each check made payable to a shell company owned by a co-conspirator and created for the purpose of laundering funds.  On occasion, Defendants purchased cashier's checks, funded by fraud proceeds, and then had the checks made payable to a co-conspirator in that co-conspirator's actual name.

    b.  *Cashing the Cashier's Checks*.  Defendants then cashed the cashier's checks in exchange for U.S. currency.  Most checks were cashed at the same check-cashing location, New Dolton Currency Exchange in Dolton, Illinois.  Defendants often used false identification documents as part of this process in order to make the check casher's records appear as though an authorized person presented the check for payment.

14.     Defendants executed these transactions in order to conceal the nature, source, and disposition of funds stolen from the e-mail compromise victims.  The ultimate disposition of the proceeds in U.S. currency resulted in the stolen funds becoming nearly untraceable and thus unrecoverable.  All of the transactions, moreover, involved more than $10,000 in funds derived from the computer hacking scheme.

All in violation of Title 18, United States Code, Section 1956(h).

COUNTS 3–4
(Money Laundering, 18 U.S.C. § 1956(a)(1)(B)(i))

The Grand Jury further charges:

15.     The factual allegations of paragraphs 2 through 10, 13, and 14 of this third superseding indictment are incorporated herein by reference.

16.     On the dates listed in the table below, in the Northern District of Ohio and elsewhere, Defendants AYOBAMI OSAS CHRISTOPHER and EMMANUEL OKEREKE knowingly conducted and attempted to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, each such transaction constituting a separate count:

| Count | Approx. Date | Amount | Sending Account | Transaction Description |
|---|---|---|---|---|
| 3 | September 13, 2022 | $100,000 | CitiBank x8694 | Wire transfer to Cleveland-area car dealer as partial payment for a 2022 Cadillac Escalade |
| 4 | December 9, 2022 | $27,000 | Bank of America x6673 | Wire transfer to Cleveland-area car dealer as partial payment for a 2022 Cadillac Escalade |

All in violation of Title 18, United State Code, Sections 1956(a)(1)(B)(i) and 2.

FORFEITURE SPECIFICATION

The Grand Jury further charges:

17.     The allegations of Counts 1 through 4, inclusive, are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(1), and Title 28, United States Code, Section 2461(c).  As a result of the foregoing offenses, Defendants AYOBAMI OSAS CHRISTOPHER. EMMANUEL OKEREKE, OLALEKAN BASHIRU, MARK DABNEY, CASEY ADESULU, JR., JEREMIAH AGINA, AYORINDE ADEBAYO, ADEREMI ADEYEMI, EMILY AGYEMANG, OLUWAFEMI AYOYEMI, ADEMOLA BALOGUN, OLABODE BANKOLE, INDIA BARNES, ARUAN DRAKE, EMMANUEL ESSILFIE, CHUKWUEMEKA EVULUKWU, JEREMIAH GLINSEY, LON GOODMAN, SHAQUILLE JACKSON, MIKHAIL KEIZE, KATIERA LACKEY, ███████████████████ KINGSLEY OWUSU, ANTON PARKER, CARLTON PRUITT, PETER REED, JR., and RONNELL SPENCER shall forfeit to the United States: all property, real and personal, which constitutes—or is derived from— proceeds traceable to the violations charged in Count 1; and, all property, real and personal, involved in the violations charged in Counts 2 through 4, inclusive, and all property traceable to such property; including, but not limited to, the following:

a.)     $763.15 seized pursuant to the execution of a federal seizure warrant on August 29, 2022, from JP Morgan Chase Bank account number: *****2191.  The account is in the name of NITA-ING SALES and is associated with OLALEKAN M. BASHIRU.

b.)     $529,129.85 seized pursuant to the execution of a federal seizure warrant on August 29, 2022, from JP Morgan Chase Bank Cashier's Check account number: *****1359.

This $529,129.85 was initially deposited into JP Morgan Chase Bank account number: *****2191 and, thereafter, was used to purchase the following cashier's checks:

    i.)    JP Morgan Chase Bank Cashier's Check # ******2568, in the amount of $169,670.35, dated August 15, 2022, payable to Primetime Movers Reliance LLC and associated with OLALEKAN M. BASHIRU.

    ii.)    JP Morgan Chase Bank Cashier's Check # ******2569, in the amount of $189,459.50, dated August 15, 2022, payable to Multichoice Concept LLC and associated with OLALEKAN M. BASHIRU.

    iii.)    JP Morgan Chase Bank Cashier's Check # ******2588, in the amount of $85,000.00, dated August 15, 2022, payable to Sparkle Transport Service Inc and associated with OLALEKAN M. BASHIRU.

    iv.)    JP Morgan Chase Bank Cashier's Check # ******2589, in the amount of $85,000.00, dated August 15, 2022, payable to Primetime Movers Reliance LLC and associated with OLALEKAN M. BASHIRU.

    c.)    $90,000.00 seized pursuant to the execution of a federal seizure warrant on or about August 29, 2023, from JP Morgan Chase Bank Cashier's Check account number: xxxxx1375.  The seized $90,000.00 is funds used to purchase JP Morgan Chase Bank Cashier's Check #xxxxxx8314 in the amount of $90,000.00, dated April 5, 2022, and made payable to Lakeside Cleaning Services, LLC.  OLALEKAN BASHIRU is associated with Lakeside Cleaning Services, LLC.

    d.)    $90,000.00 seized pursuant to the execution of a federal seizure warrant on or about August 29, 2023, from JP Morgan Chase Bank Cashier's Check account number: xxxxx1359.  The seized $90,000.00 is funds used to purchase JP Morgan Chase Bank Cashier's Check #xxxxxx9024 in the amount of $90,000.00, dated August 3, 2022, and made payable to Sparkle Transport Services, Inc.  OLALEKAN BASHIRU is associated with Sparkle Transport Services, Inc.

e.)     $101,350.00 seized pursuant to the execution of a federal seizure warrant on or about November 15, 2023, from JP Morgan Chase Bank Cashier's Check account number: xxxxx1367.  The seized $101,350.00 is funds used to purchase JP Morgan Chase Bank Cashier's Check #xxxxxx5733 in the amount of $101,350.00, dated May 19, 2022, and made payable to ETF Transport, LLC.  EMMANUEL OKEREKE is associated with ETF Transport, LLC.

f.)     $98,000.00 seized pursuant to the execution of a federal seizure warrant on or about November 6, 2023, from JP Morgan Chase Bank Cashier's Check account number: xxxxx1326.  The seized $98,000.00 is funds used to purchase JP Morgan Chase Bank Cashier's Check #xxxxxx4816 in the amount of $98,000.00, dated August 16, 2022, and made payable to Glenwood Floral LLC.  ARUAN DRAKE is associated with Glenwood Floral LLC.

g.)     $16,000.00 seized pursuant to the execution of a federal seizure warrant on or about November 6, 2023, from JP Morgan Chase Bank Cashier's Check account number: xxxxx1326.  The seized $16,000.00 is funds used to purchase JP Morgan Chase Bank Cashier's Check #xxxxxx3310 in the amount of $16,000.00, dated August 15, 2022, and made payable to Glenwood Floral LLC.  ARUAN DRAKE is associated with Glenwood Floral LLC.

h.)     Taurus 9mm handgun, serial number: TJY50288, with magazine and eight 9mm bullets, seized on September 20, 2023, pursuant to the execution of a search warrant at the Peachtree Road NE, Atlanta, Georgia, residence (apartment) of ARUAN DRAKE.

i.)     $6,000.00 U.S. Currency seized on September 20, 2023, pursuant to the execution of a search warrant at the Peachtree Road NE, Atlanta, Georgia, residence (apartment) of ARUAN DRAKE.

j.)     Patek Philippe Nautilus 5726A stainless steel watch with stainless steel strap, valued at $45,000.00.  Movement engraved: 5896281 324; band engraved: A 384 FBC.  The watch was seized from the person of AYOBAMI OSAS CHRISTOPHER on August 4, 2024.

k.)     Audemars Piguet Royal Oak self-winding Chronograph Watch—in 18k rose gold —valued at $30,000.00.  Hallmarked 750 with Swiss marks; case back marked: XM0716G.  The watch was seized from the person of AYOBAMI OSAS CHRISTOPHER on August 4, 2024.

l.)     Richard Mille Felipe Massa RM 011 Chronograph Watch—titanium and 18k rose gold—valued at $140,000.00.  Case back marked: RM011 AJRG / 1895 Felipe Massa; movement marked: RMAC1 #7032.  The watch was seized from the person of AYOBAMI OSAS CHRISTOPHER on August 4, 2024.

m.)     960 Nours Circle, Lawrenceville, Gwinnett County, Georgia; Parcel ID Number: R5217 136.  The property consists of a two-story single family residence constructed in 2022, having approximately 4,423.00 square feet.  The record owner of the property is Zee World Investments LLC.  AYOBAMI OSAS CHRISTOPHER is associated with Zee World Investments LLC.

n.)     2022 Cadillac Escalade, Vehicle Identification Number: 1GYS4GKL7NR355273. The vehicle is registered to the spouse/partner of AYOBAMI OSAS CHRISTOPHER.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.

19